FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

FEB 20 2024

CENTRAL DISTRICT OF CALIFORNIA
BY ___ DEPUTY

**PAID**

1  Olakunle Ola
2  kunleola@gmail.com
3  4521 Campus Drive, #562,
4  Irvine, CA 92612
5  2145859730
6  Plaintiff in Pro Per

7
8
                **UNITED STATES DISTRICT COURT**
9                **CENTRAL DISTRICT OF CALIFORNIA**
10

11  OLAKUNLE OLA                         **Case No . :** 8:24-cv-00345-JWH-(DFMx)
12            Plaintiff,
13       vs.                             **1.RACIAL DISCRIMINATION AND**
                                         **HARASSMENT (TITLE VII)**
14  GALAXE SOLUTIONS INC a
15  Delaware corporation,               **2. RETALIATION FOR COMPLAINTS**
                                         **OF HARASSMENTAND**
16  BRETT KERBEL an individual,
                                         **DISCRIMINATION (TITLE VII)**
17  ORLINDA D'SOUZA an individual,
                                         **3.FAILURE TO PREVENT**
18            Defendants.
                                         **RETALIATION AND HARASSMENT**
19
                                         **4. WRONGFUL TERMINATION**
20
                                         **5. DEFAMATION PER SE**
21
                                         **DEMAND FOR JURY TRIAL**
22

23                                       _____

24
25
26
27
28

Complaint

1

2   1.      Plaintiff Olakunle Ola brings this action against Defendants Galaxe

3   Solutions, Brett Kerbel an individual, Orlinda D'Souza an individual, for general,

4   compensatory, punitive and statutory damages; prejudgment interest, costs; and

5   other appropriate and just relief resulting from the defendants unlawful and tortious

6   conduct and as grounds therefore alleges:

7

8                          **JURISDICTION AND VENUE**

9          2.      This court has jurisdiction under 28 U.S.C § 1332 because there is

10  diversity of citizenship and the amount in controversy is greater than $75,000.00.

11  Venue is proper in the Central District of California pursuant to 28 U.S.C §1391(c)

12  because all the acts, events and omissions giving rise to the action while the

13  plaintiff was resident in County of Orange, CA.   Plaintiff's state law claims for

14  relief are within the supplemental jurisdiction as authorized by 28 U.S.C section

15  1367.

16                                  **PARTIES**

17         3.      Plaintiff Olakunle Ola ("Plaintiff") is a resident of Orange County
    California. Defendant Galaxe Solutions Inc ("Galaxe Solutions") is a Delaware

18  corporation conducting business out of the state of New Jersey.

19  Defendant Brett Kerbel ("Brett Kerbel") was at all times herein employed by

20  Galaxe Solutions as Vice President Delivery.

21  Defendant Orlinda D'Souza ("Orlinda D'Souza") was at all times herein employed
    by Galaxe Solutions as Director

22

23                          **STATEMENT OF FACTS**

24      **Background**

25         4.      Plaintiff was hired by Galaxe Solutions on or about 18 March 2022 as

26  Senior Technical Manager to work remotely from his home in Orange County,

27  California. He holds a Masters Degree in Information Systems Design from the

28

1  University of Westminster, London, UK and has over 25 years' experience in the
2  IT industry.

3      5.    On or about July 2022, Plaintiff was assigned to a Performance
4  Improvement project with a Galaxe Solutions client under the direction of Dennis
5  Driscoll, Director as Technical Manager

6      6.    On or about July 2022, Galaxe Solutions prepared a design document
7  and proposal to the client to request $1,000000.00(1 million dollars) with a
8  detailed design and implementation proposal

9      7.    The technical design was prepared by the technical team under the
10 leadership of Sanjay Gupta prior to Plaintiff's assignment to the project.

11     8.    The proposal and design were vetted by Brett Kerbel VP Delivery,
12 Donna  Posnack-Haber Senior Vice President and Dheeraj Misra Senior Vice
13 President

14     9.    Dheeraj Misra and Brett Kerbel took an airplane flight to Florida to
15 personally present the design and proposal to the client

16     10.    After the presentation of the proposed design, Sanjay Gupta decided
17 on or about July 2022 to change the original design that was presented to the client.

18     11.    The proposed change was approved by Dennis Driscoll and Brett
19 Kerbel.

20     12.    On or about August 2022, Dennis Driscoll decided Plaintiff should
21 jointly supervise the documentation of technical design of the project with Sanjay
22 Gupta, who had sole lead role for technical design up to that point.

23     13.    Dennis Driscoll retained overall responsibility for all design decisions

24     14.    Dennis Driscoll instructed Plaintiff to send out an email advising the
25 team of the change in approach and leadership. Email was sent to the technical
26 team in line with Dennis Driscoll's instructions.

27
28

15.     The technical team refused to take direction and instructions from Plaintiff and sent multiple emails to leadership complaining about Plaintiff, expressing a strong preference for Sanjay Gupta to continue as sole lead

16.     In an email written by Saurabh Kaushal - Director in August 2022 to Dennis Driscoll and Brett Kerbel, he presented a series of smears by the technical team as  fact with the intention of restoring their Indian  colleague to what they believed was his rightful position .

17.     The email made the following derogatory and false comments inter alia about Plaintiff:

- He lacked the intelligence to understand technology
- He could not understand technology even when the technical team tried to explain things to him
- Insinuated that he lied about his credentials to get the job
- He did not know anything but wanted to control everything

**Harassment and Obstruction**

18.     Dhananjay Kumar –(Architect) refused to take directions from Plaintiff on multiple occasions.

19.     During team meetings with the technical team, the technical team would make asides like " why are you teaching him ?" while Plaintiff was in the process of working through design sessions and asking questions about previous designs

20.     Jesus Milton – Software engineer refused to accept edits to his designs on multiple occasions and stated that Plaintiff was wasting Milton's time.

21.     Ramarand Srimal -Project Manager created a spreadsheet following instructions from Saurabh Kaushal solely to track Plaintiff's Day to day interactions with the technical team.

**Attempts to find a Solution**

22.     Plaintiff informed Dennis Driscoll by email multiple times of the ongoing harassment and refusal to take directions by the technical team.

23.     In early September 2022, Dennis Driscoll called a meeting with the technical team to discuss the situation.

24.     Plaintiff was asked to sit out the meeting by Dennis Driscoll

25.     The following day Dennis Driscoll informed Plaintiff that he addressed the issue and warned Dhananjay Kumar to stop refusing to take directions

26.     Dhananjay Kumar continued to refuse to take directions

27.     Rather than address the insubordination, Brett Kerbel assigns a Senior Technical Manager("Mark") to work directly with Plaintiff in the same role.

**Things take a turn for the worse – Vikram Yegula takes over project leadership**

28.     In or about September 2022, Dennis Driscoll resigned from his position as Director with Galaxe Solutions

29.     Dennis Driscoll was replaced by Vikram Yegula -Director("Yegula") and things immediately took a turn for the worse.

30.     At the first meeting Yegula accused Plaintiff of not doing any work even though he is only assigned to one project. He instructs the plaintiff to prepare a presentation for the following day on project status.

31.     During the meeting attended by 17+ plus people, several of whom took instructions from the plaintiff, the plaintiff and a business analyst started the presentation requested by Yegula. Yegula interrupts the presentation by yelling **"That is not what I asked for, take it off!!"**

32.     Yegula did not provide further illumination on what he wanted for the presentation; he just ended the presentation

**Yegula escalates the harassment by weaponizing task allocation(Less desirable assignments)**

33.    The performance improvement project was organized and administered using Jira.

34.    Jira is a project management and issue tracking software platform used widely throughout the IT industry for software development especially for agile project management.

35.    Jira is used by over One hundred and twenty thousand (120,000.00) companies around the world. It is the de-facto tool for project management in software development.

36.    Agile software development is a common software delivery practice in the IT industry that emphasizes collaboration, flexibility and incremental delivery for software development.

37.    The project team (17+ members) had been working collaboratively over three months to define requirements, estimate time for task completion and track research items prior to Yegula's arrival.

38.    Yegula instructed Plaintiff to manually transcribe 3 months work by 17 people into an excel spreadsheet. This task appeared to have no value beyond putting Plaintiff into a stress position.

39.    Once he realized the scope of the effort, Plaintiff delegated parts of this task to the technical team.

40.    Yegula then assigned another task. He instructed Plaintiff to provide a Project Breakdown Structure of the project.

41.    Given the availability of Jira and its reporting functions, this task did not provide any utility beyond placing Plaintiff in a stress position.

42.     Project Breakdown structures are normally used for extremely large projects like constructing Aircraft or building a Skyscraper. It had no place in a small three-month project.

43.     Project Breakdown structures are created by Project Managers. We had two Project Managers on the Project, but Yegula did not ask them to work with Plaintiff on the task.

**Yegula starts using co-workers as proxies for harassment**

44.     In or around early October 2022, Yegula escalated the attacks and started using proxies to harass Plaintiff.

45.     In a team meeting of the project leadership, Yegula made a baseless accusation that Plaintiff had misled the executive leadership on the status of the project.

46.     Exasperated and worn out by the constant attacks from his line manager, Plaintiff told Yegula that he thinks Yegula treats people poorly and other members of the project team have confided their fears over his leadership style.

47.     Yegula immediately demanded a straw poll of the two project managers, and the Architect in the meeting. He demanded they inform him if they have a problem with his leadership style. They all demurred and told him they thought his leadership style was just fine.

48.     Present at the meeting were Srimal Ramarand (Project Manager), who had led the smear campaign against Plaintiff, Joe Scarano(Project Manager) and Dhananjay Kumar(Architect) who had refused to take directions from Plaintiff prior to Yegula's arrival.

49.     Yegula then instructed Plaintiff to attend a meeting organized by Srimal Ramarand with Joe Scarano attending.

50.     Yegula instructed Srimal Ramarand to obtain the names of all the team members who had complained to Plaintiff about Yegula's leadership style.

51.     At the meeting, Srimal Ramarand badgered Plaintiff for around ten minutes, insisting he provided the names as demanded by Yegula. At one point, Srimal Ramarand urged Plaintiff to confess he made it all up.

52.     After about ten minutes, Joe Scarano recommended that Srimal Ramarand end the meeting because there was no progress

**The Proxy attacks continue and Plaintiff's health fails under the onslaught**

53.     In or around October 2022, Plaintiff received instructions from Joe Scarano to provide a detailed breakdown of what every member of the technical team would be working on in the week ahead.

54.     This was surprising because the Jira dashboard indicates the active tasks for each team member and its status. Srimal Ramarand had also been responsible for tracking these tasks for the previous eight months of the project.

55.     Plaintiff complies by email and provides Joe Scarano of the list of tasks. Joe Scarano responds by attacking every task and demanding that the schedule be re-done.

56.     Surprised by the turn of events, Plaintiff provides a line-by-line explanation of what was allocated and why.

57.     Joe Scarano responds by escalating to Yegula, stating that (sic) "it would help if you gain Yegula's perspective..."

58.     At this point, Plaintiff was up reading and responding to work emails around 2:00am in the morning, he had insomnia, night sweats and sweaty palms.

59.     Plaintiff was diagnosed with diabetes some five months previous and stress was a decisive factor in his condition. When he checked his blood sugar, he saw that the blood sugar had spiked above safe limits.

60.     At this point, Plaintiff decided to put his health first and consult a medical professional about the insomnia, night sweats and blood sugar spike.

**Medical Leave**

61.     Plaintiff consulted with a medical professional who diagnosed him with Depression, advised him to take two weeks off work and instructed him to find Mental Health professionals who could help him get better .

**Racial Discrimination (Disparate Treatment) and Harassment complaint filed with HR**

62.     Whilst on Medical Leave in October 2022, Plaintiff filed a complaint for racial discrimination with HR. He was interviewed by Olivia Grand-Pierre. Plaintiff explained that he was treated differently from the other members of the leadership team and blocked by the Indian nationals on the technical team who were campaigning for Sanjay Gupta another Indian national to resume leadership of the technical team.

63.     Plaintiff provided multiple emails of the various incidents and requested that HR review the zoom chat transcripts between the technical team for some of the more hostile comments that he had observed during team meetings.

**HR refuses to investigate the complaint.**

64 .    On or around October 2022 Olivia Grand-Pierre invited Plaintiff to a Zoom meeting and informed him that HR had decided not to investigate the complaint.

65.     She stated that since none of the documentation shared contained racially explicit abuse, Galaxe did not believe the complaint merited an investigation.

**Benched**

66.     On return to work in October 2022, Plaintiff was informed by Yegula that he had been replaced on the project. He was joined by David Boulton VP HR,

who informed Plaintiff that he would be on the bench until another project could be found for him.

There was no further communication with Galaxe management for another three weeks

**Demoted**

67.     On or about 22 November 2022, Plaintiff was invited into a meeting by Brett Kerbel Vice President Delivery. Brett Kerbel informed Plaintiff that he was assigning him to a new project.

68.     Brett Kerbel informed Plaintiff that the new role had no leadership responsibilities as the technical team was "**self-managing**". He said " This is a hands on role, I want you to focus on the XML integration, because that is where they need help..".

69.     Brett Kerbel informed Plaintiff that the project was led by Orlinda D'Souza Director and was supported by Lakshmi Kasturi who was her "right hand man", that they have been working together for seven years and Plaintiff needed to be aware of that.

**Orlinda D'Souza confirms Demotion.**

70.     Orlinda D'Souza calls Plaintiff into a separate meeting a few minutes after the meeting with Brett Kerbel. The meeting is also attended by Lakshmi Kasturi – Analyst.

71.      Orlinda D'Souza explains to Plaintiff that Lakshmi Kasturi is the Lead for both the Business Analysts and the Technical team.

72.     Orlinda D'Souza instructs Plaintiff that he is not to interact directly with the technical team under any circumstances. She states, "Lakshmi is the point of contact for the technical team".

**Lakshmi Kasturi – Analyst becomes Plaintiff's Supervisor.**

73.     As a Senior Technical Manager, an analyst will take direction and instructions from Plaintiff.

74.     Lakshmi Kasturi - an analyst became Plaintiff's Day to day supervisor, allocating tasks, setting deadlines, and editing his work.

75.     Plaintiff had infrequent communication with Orlinda D'Souza who was in constant contact with Lakshmi Kasturi.

76.     Lakshmi Kasturi introduced Plaintiff to the technical team, explaining that he was a "SailPoint" expert there to help with "XML integration".

**Brett Kerbel VP writes a negative Performance Review three months after Plaintiff's demotion and disciplines him by placing him on a Performance Improvement plan.**

77.     On December 16, 2022. Brett Kerbel called Plaintiff on Zoom asking for a quick "sync-up", during the meeting on Zoom, Brett Kerbel tells Plaintiff that he is now Plaintiff's line manager. Brett Kerbel told Plaintiff that there was no cause for alarm, that the change from Yegula had taken place only because Plaintiff was making too much money to be reporting to a Director. Brett Kerbel went on to ask Plaintiff how he was getting on and told Plaintiff to get in touch with him if he had any problems.

**Kerbel initiates excessive scrutiny of Plaintiff's work**

78.     On or about 17 February 2023, shortly after a tense meeting with the client, triggered by Lakshmi Kasturi's leadership. The Client, a Director escalated

the issue by email to Orlinda D'Souza complaining about a two week time estimate provided to him by Lakshmi Kasturi.

79.    The Client informed Orlinda D'Souza that he needed a response in a week. Orlinda D'Souza for unclear reasons, promised to deliver in three days.

80.    Lakshmi Kasturi now shaved off another day and imposed a two-day deadline for a task she had just told the client would require two weeks and assigned the task to Plaintiff.

81.    Plaintiff worked through the weekend to meet this new deadline, as he was working on another task for a client, a Vice President. This task was due in two working days.

82.    After completing the task, Plaintiff sent a copy of the prepared presentation to Lakshmi Kasturi who told Plaintiff to send the Presentation to another Director Sushil Dania for review ahead of meeting with the client. Lakshmi Kasturi also asked him to send it to Mithilesh a Vice President working out of India.

83.    Plaintiff sent the Presentation to Sushil Dania, who validated the solution and added a few items he wanted included in the solution.

84.    In a zoom meeting, Lakshmi Kasturi insisted that Plaintiff add the items by end of day. Plaintiff explained to Lakshmi Kasturi who lacked the technical experience to make a sound judgement on the issue, that the items would take multiple days to accomplish .

85.    Plaintiff explained to Lakshmi Kasturi that the changes recommended by Sushil Vania were not necessary for the meeting with the client and could be added after the meeting in preparation for creating a solution for the technical team.

86.    Plaintiff also explained to Lakshmi Kasturi that another task was due with the client the next day and this task had already been escalated by the client.

1  Lakshmi Kasturi agreed to the proposed plan to update the presentation after the
2  client meeting.

3       87.    However, Lakshmi Kasturi then followed up with an email insisting
4  that both tasks be completed immediately, she copied both Orlinda D'Souza and
5  Brett Kerbel on the email.

6       88.    In response, Plaintiff pointed out the problems associated with hyper-
7  aggressive deadlines in Engineering and the ensuing issues with quality. Plaintiff
8  requested a meeting with Orlinda D'Souza and Brett Kerbel for clarity.
9  **In response, Brett Kerbel bypassed the project reporting hierarchy and takes**
10 **over direct supervision of all Plaintiff's work from that point.**

11      89.    Brett Kerbel also assigned Santosh Bijnipally a Technical manager
12 outranked by Plaintiff as a direct supervisor of Plaintiff's work going forward.

13      90.    Brett Kerbel rejected a project estimate and technical design created
14 over a 3-4 week period in collaboration with the client, Project Manager, Associate
15 Technical Manager, Vice President Application, Application Architect, Director
16 Delivery and insisted on calling a group meeting of the entire technical and project
17 management team to discuss and redo the solution.

18      91.    At the team meeting on or around 27 February 2023, Brett Kerbel
19 asked Plaintiff to present the solution. After a few minutes' discussion, it became
20 obvious that the proposed solution was correct, so, Brett Kerbel insisted on a
21 meeting with the client to re-discuss the solution that had already been approved by
22 the client after multiple meetings.

23      92.    At the meeting with the client, the client wondered if " we are back to
24 square one" , Brett Kerbel stated that he wanted to confirm an item that Plaintiff
25 had already assured Brett Kerbel had been raised and handled. Backup procedures.

26      93.    Both meetings called at Brett Kerbel's insistence did not result in any
27 changes to the prepared documents. All the indications were that Brett Kerbel was
28 on a fishing expedition.

94.     Brett Kerbel then attacked a PowerPoint Presentation prepared by Plaintiff as a basis for discussions with the client. Brett Kerbel added several irrelevant and incorrect changes to the diagram prepared by Plaintiff, rendering the diagram unusable.

95.     During the meeting with the client, the client laughed out loud when presented with Brett Kerbel's changes, stating that the diagram "was impossible to follow", adding to the general sense of incompetence created by the project leadership on a project that had failed to meet three deadlines.

**Brett Kerbel further retaliates by assigning Plaintiff low level tasks under his personal supervision.**

96.     Brett Kerbel assigns the Plaintiff a task usually assigned to junior analysts creating "User Stories" , User stories describe what task needs to be done. Brett Kerbel insists that he wants the task completed in 3hrs.

97.     When the Plaintiff explained to Brett Kerbel that the Project plan estimated it as a 30 hr task, Brett Kerbel stated**" I don't care if it is 10 user stories or 150 user stories, I want it done in the next three hours"**.

98.     At this point, the stress of the situation had become overwhelming for the Plaintiff who had to take the rest of the day off.

99.     Despite insisting that the task had to be completed in three hours, Brett Kerbel took a 1 week vacation without re-assigning the task.

**Santosh Bijnipally becomes Plaintiff's third Supervisor**

100.     Around February 28, Lakshmi Kasturi informed the plaintiff in an email that Santosh Bijnipalli, a Technical Manager outranked by the Plaintiff would now "brainstorm" with the Plaintiff going forward. Santosh Bijnipally's emails and zoom meetings left no doubt that he had been deputized to supervise the Plaintiff.

**Performance Review (PR) and Performance Improvement Plan(PIP)**

101.   On or about 28 February 2023, Brett Kerbel delivered a performance review for 2022 for Plaintiff.

102.   David Boulton VP HR was present at the performance review session.

103.   Brett Kerbel appeared confused about basic performance review rules. He delivered a performance review for 2022 but focused his review on two weeks in February 2023. When asked by Plaintiff if the performance review was for 2022 or 2023, he appeared at a loss for words and looked for David Boulton to bail him out.

104.   David Boulton stepped in and told Plaintiff that Galaxe Solutions allows performance reviews for multiple years to be merged when the circumstances warrant it.

**Lies, Fabrications and Defamatory Statements in Performance Improvement Plan and Performance Review**

104.     In a mendacious Tour de force, Brett Kerbel made the following false and defamatory statements to justify initiating termination proceedings :

- He falsely stated that the Performance Improvement Plan was triggered by a complaint from the client about Plaintiff, knowing the complaint was about Lakshmi Kasturi.

- He falsely stated that Plaintiff was responsible for the delivery of GxCapture proprietary platform even though he knows that Lakshmi Kasturi was responsible for the delivery of that platform.

- He falsely stated that he provided a verbal warning to Plaintiff about his performance on December 16 ,2022, when no such warning was given or warranted.

- He falsely accused Plaintiff of not providing active leadership or management

105.     Brett Kerbel continued with a list of defamatory statements, falsely accusing Plaintiff of :

- Not working on a task assigned to him by the Program Lead for several weeks even though there is documentation showing that Plaintiff acted on the task immediately and provided feedback to the Program Lead

- Refusing to take part in meetings, because Plaintiff took the position that he did not need to do anything because he joined an active project. There are multiple documents that directly refute this defamatory comment.

- Not participating in a Proof of concept solution, even though this was created by Lakshmi Kasturi and he was kept in the dark about it.

- Not providing feedback on Technical design and UI as requested by Program Lead, even though there are multiple documents and Zoom chat transcripts that show Plaintiff providing feedback and guidance.

  Not proactively driving solutions, even though there are multiple documents that reflect Plaintiff doing exactly that.

**Orlinda D'Souza makes defamatory statements to Brett Kerbel about Plaintiff**

106.     Orlinda D'Souza falsely states to Brett Kerbel that Plaintiff did not work on the "Bitbucket/BOT" approach for several weeks, even though she knows Plaintiff  worked on the task immediately and provided written feedback within a day or two .

107.     Orlinda D'Souza falsely states to Brett Kerbel that Plaintiff had not been making design decisions and removing technical blockers even though she was aware that Plaintiff had made multiple design decisions and removed technical blockers, all to create the false impression that Plaintiff is incompetent.

**Health Fails a second time**

108.     During the performance review session, Plaintiff protested that Brett Kerbel was making things up about him, this provoked a threat from Brett Kerbel

1  in which he stated " Things are not going to go well for you if you keep talking
2  like that.."

3      109.   David Boulton VP HR looked on impassively and said nothing when
4  Plaintiff protested that the Performance Review and Improvement Plan were
5  replete with lies.

6      110.   Plaintiff wears a Continuous Glucose Monitor to monitor his blood
7  sugar. After the meeting with Brett Kerbel and David Boulton, his blood sugar
8  spiked to an unsafe level and he had to take the rest off the day off as sick leave.
9   Plaintiff's insomnia and night sweats returned.

10     111.   Plaintiff's therapist had to increase his medication to treat the relapse
11  of depression, insomnia and night sweats.

12     112.   Plaintiff was off work for three months as a result.

13  **Equal Employment Opportunity Commission (EEOC) Charges**

14     113.   On 30 March 2023, EEOC agreed to file charges of racial
15  discrimination and retaliation on behalf of Plaintiff based on the events between
16  August 2022 – February 2023.

17  **Return to Work**

18     114.   Plaintiff returned to work on 26 May 2023 and was informed by Brett
19  Kerbel and David Boulton that he was off the project and that Brett Kerbel would
    personally undertake the task of finding him a new project at which point the
20  Performance Improvement Plan would be re-initiated.

21     115.   On or about the 8th of June 2023, Plaintiff was contacted by Hemant
22  Surana Vice President Delivery to work for him on a Request for Proposal (RFP)
23  Hemant Surana explained to Plaintiff that Brett Kerbel had let him know that
24  Plaintiff was available, and he would like to use his services for the RFP that was
    due on 16 June 2023.
25
26     116.   At a meeting with Brett Kerbel on 9 June 2023, he informed Plaintiff
27  that there were multiple executives expressing an interest in Plaintiff's skillset.

28

Particularly, he stated that he received an email from another Vice President that was interested in Plaintiff's background in healthcare.

117.   Brett Kerbel instructed Plaintiff to work for Hemant Surana because that was the best opportunity available. Abhay Kumar – Architect working with Hemant Surana provided Plaintiff with reference materials on the RFP and Plaintiff was working on designing the proposed architecture for the project with a due date of 15 June 2023 when he was abruptly laid off for "Lack of work" on 13 June 2023.

**Terminated after Request for Skip Level Meeting**

118.   On or about 12 June 2023, Plaintiff sent an email to David Boulton, copied to Brett Kerbel contesting the lies and fabrications in the Performance Review and Performance Improvement Plan written by Brett Kerbel.

119.   Plaintiff set out his belief that he had been retaliated against by Brett Kerbel for engaging in a protected activity, he cited the demotion, falsehoods and fabrications to justify the negative evaluation and performance improvement plan with unfeasibly high performance targets.

120.   He requested a Skip Level meeting in line with the Galaxe Employee handbook to discuss the lies in the performance review and performance improvement plan.

**Terminated without a response from HR.**

121.   Plaintiff was terminated by Galaxe Solutions the next day  without a response from HR on June 13, 2023.

122.   Official reason was Layoff- Lack of Work.

123.   Plaintiff was the only Galaxe employee laid on June 13 2023.

124.   After the exit meeting, Plaintiff did not receive his termination paperwork for another four days.

**Spoliation of Evidence**

125.   On or around August 2023, Plaintiff requested the Performance Review written by Brett Kerbel and presented to Plaintiff on February 28 2023.

126.   David Boulton responded by sending a heavily edited version of the document written by Brett Kerbel in February 2023.

127.   This is problematic because the Performance Review document was the basis and justification for creating the Performance Improvement Plan(PIP).

128.   The PIP justifies the initiation of termination proceedings.

129.   David Boulton passed off the doctored document as the original.

**Right to Sue**

130.   On or around 15 June 2023, California Civil Rights Department issued a right to sue letter to Plaintiff. – **Exhibit 1 attached**

131.   On or around 20 November 2023 Equal Employment Opportunities Commission issued a right to sue letter to Plaintiff. – **Exhibit 2 attached**

**FIRST CLAIM FOR RELIEF**
**DISCRIMINATION ON BASIS OF RACE AND NATIONAL ORIGIN**
**[TITLE VII 42 USC Section2000e et seq against Galaxe Solutions]**

132.   Plaintiff incorporates herein and by reference all of the foregoing facts and allegations of this complaint as though fully set forth herein.

133.   Plaintiff Olakunle Ola, while an employee at Galaxe Solutions was discriminated against and harassed based on his race and National origin. As detailed supra 15-60 immediately after plaintiff was instructed to lead the documentation of the technical design by Dennis Driscoll, the technical team made up of Indian nationals banded together to block the plaintiff from executing the role assigned to him with the intent of restoring Sanjay Gupta, an Indian national to sole leadership of the technical team.

134.   The technical team led by Director Saurab Gaushal a Director and Ramarand Srimal a Project Manager circulated emails questioning the plaintiff's

intelligence and ability to understand technology, despite the plaintiff holding a master's degree in information system design and over 25 years experience in IT.

135.   The emails also accused the plaintiff of forging his credentials to get the job inter alia.

136.   The harassment escalated with the appointment of Vikram Yegula an Indian national, he assigned less desirable tasks designed to create stress, humiliate the plaintiff by yelling at him, use proxies to attack his work.

137.   No other Senior technical leader on the team or any of the members of the technical team had to endure this disparate treatment .
 Discrimination on the basis of Race and National Origin("Nigerian") is prohibited under Title VII,42 USC §2000e.

138.   The harassment endured by the Plaintiff was so severe and pervasive that it altered the terms and conditions of the plaintiff's employment and created an abusive work environment.

139.   The Plaintiff was the victim of a smear campaign, harassed, yelled at , demoted, re-assigned to  less desirable tasks, defamed in a bogus performance review and disciplined by being placed on a performance review plan based on lies and fabrications.

140.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and will continue to suffer pain and suffering; anxiety; embarrassment; depression; loss of earnings and other employment benefits. Plaintiff is therefore entitled to general and compensatory damages in an amount according to proof at trial.

141.   The conduct of Defendant and/or their agents/employees as described herein was malicious and oppressive and done with a willful and conscious disregard for Plaintiff's rights entitling Plaintiff to an award of punitive damages from Defendant .

## SECOND CLAIM FOR RELIEF

### RETALIATION FOR COMPLAINING ABOUT DISCRIMINATION AND HARASSMENT

### [TITLE VII 42 USC §2000e et seq. Against Galaxe Solutions]

142.   Plaintiff incorporates herein by reference all of the foregoing facts and allegations of this complaint as though fully set forth herein.

143.   Plaintiff Olakunle Ola, while an employee at Galaxe Solutions was discriminated against and harassed based on his race and National Origin and was retaliated against when he complained about the harassment and discrimination.

144.   After Plaintiff filed a formal complaint with Galaxe Solutions HR, he was removed from his active project, left on the bench for three weeks, demoted and set up in a bogus meeting designed to bypass Galaxe Solutions progressive discipline policies.

145.   Galaxe Solutions HR refused to investigate the complaint, despite the policies laid out in the Galaxe Solutions Employee Handbook that mandates an investigation.

146.   In February 2023, Brett Kerbel Vice President Delivery, conducted a performance review based on lies and fabrications and conducted outside the Annual Performance Review cycle.

147.   Brett Kerbel disciplined the Plaintiff by placing him on a Performance Improvement Plan based on lies and fabrications and initiated the termination process.

148.   After filing a charge with EEOC in March 2023, Galaxe Solutions through Brett Kerbel and David Boulton, removed the Plaintiff from his active project and benched him.

149.   Galaxe Solutions terminated the Plaintiff a day after he requested a Skip Level meeting with head of HR Michelle Cohen to discuss the lies and fabrications in the Performance Review and Performance Improvement Plan.

1   150.   The official reason was "Layoff -lack of work", although the Plaintiff
2   was actively working for Hemant Surana (Vice President -Delivery). The plaintiff
3   was the only person laid off that day.

4   151.   Retaliation for complaints of harassment and discrimination is
5   actionable under Title VII.

6   152.   As a direct and proximate result of Defendant's unlawful conduct,
7   Plaintiff has suffered and will continue to suffer pain and suffering; anxiety;
8   embarrassment; humiliation; loss of self-esteem; depression; severe mental anguish
9   and emotional distress; loss of earnings and other employment benefits. Plaintiff is
10  therefore entitled to general and compensatory damages in an amount according to
11  proof at trial.

12  153.   The conduct of Defendant and /or their agents/employees , as
13  described herein, was malicious and oppressive and done with a willful and
14  conscious disregard for Plaintiff's rights entitling Plaintiff to an award of punitive
15  damages from Defendant.

16  ### THIRD CLAIM FOR RELIEF
17  **FAILURE TO PREVENT DISCRIMINATION AND HARASSMENT**
18  **[VIOLATION OF CAL.GOV.CODE§§ 12940(j) & (k) Against Defendant**
19  **Galaxe Solutions]**

20  154.   Plaintiff incorporates herein by reference all of the foregoing facts and
21  allegations of this complaint as though fully set forth herein.

22  155.   In violation of California Government Code §§ 12940(j) & (k)
23  Defendant Galaxe Solutions failed to take all reasonable steps necessary to prevent
24  discrimination and harassment based on Race and National Origin from occurring
25  and retaliation against employees for opposing and complaining about unlawful
26  practices.

27
28

156.   Plaintiff was harassed and discriminated against because of his Race and National Origin. Plaintiff was retaliated against for complaining to Galaxe HR about discrimination in or about October 2022.

157.   Galaxe HR refused to investigate the formal complaint filed by Plaintiff with HR.

158.   Plaintiff was also retaliated against in or about May 2023 and 13 June 2023 for filing a complaint about discrimination and retaliation with EEOC.

159.   At all relevant time periods Defendant Galaxe Solutions failed to make an adequate response and investigation into the conduct of Defendant Galaxe Solutions and any of its agents/employees and the aforesaid pattern and practice.

160.   During all relevant time periods, Defendant Galaxe Solutions failed to provide any or adequate training, education, and information to their personnel and most particularly to management and supervisory personnel with regards to policies and procedures regarding racial discrimination and retaliation for complaining of racial discrimination. The conduct set forth herein, violated Plaintiff's rights under inter alia California Government Code § 12940 (a),(h), (I),(j) and (k).

161.   As a direct and proximate result of Defendants' unlawful conduct, and failure to prevent discrimination, harassment and retaliation, Plaintiff has suffered and will continue to suffer pain and suffering; anxiety; embarrassment; humiliation; loss of self-esteem; depression; severe mental anguish and emotional distress ; loss of earnings  and other employment benefits. Plaintiff is therefore entitled to general and compensatory damages in am amount according to proof at trial.

162.   The conduct of Defendant and/or their agents/employees as described therein, was malicious and oppressive and done with a willful and conscious disregard for Plaintiff's rights entitling Plaintiff to an award of punitive damages from Defendant.

1

2

## FOURTH CLAIM FOR RELIEF

3

## WRONGFUL TERMINATION – RETALIATION

4

## [ VIOLATION OF TITLE VII 42 USC §2000e et seq Against Defendant

5

## Galaxe Solutions]

6        163.   Plaintiff incorporates herein by reference all the foregoing facts and

7   allegations of this complaint as though fully set forth therein.

8        164.   On 12 June 2023, Plaintiff sent an email to David Boulton Vice

9   President HR requesting a Skip Level meeting with Michele Cohen Senior Vice

10  President HR to discuss the retaliatory actions by Brett Kerbel in line with the

11  policies outlined in the Employee handbook.

12       165.   Plaintiff was terminated the next day 13 June 2023 without a response

13  from HR.

14       166.   As a direct and proximate result of Defendant's unlawful conduct.

15  Plaintiff has suffered and will continue to suffer pain and suffering; loss of self-

16  esteem; depression; severe mental anguish and emotional distress; loss of earnings

17  and other employment benefits. Plaintiff is therefore entitled to general and

18  compensatory damages in an amount according to proof at trial.

19       167.   The conduct of Defendant and/or their agents/employees, as described

20  herein, was malicious and oppressive and done with a willful and conscious

21  disregard for Plaintiff's rights entitling Plaintiff to an award of punitive damages

22  from Defendant.

23  //

24  //

25  //

26  //

27  //

28  //

# FIFTH CLAIM FOR RELIEF
## DEFAMATION – LIBEL  PER SE IN VIOLATION OF CALIFORNIA
## CIVIL CODE §44, §45, §46
### [Against all Defendants]

168.   Plaintiff incorporates herein by reference all of the foregoing facts and allegations of this complaint as though full set forth herein.

169.   Brett Kerbel and Orlinda D'Souza defamed Plaintiff by making false statements in the Performance Improvement Plan accusing the Plaintiff of incompetence and dishonesty to justify discipline proceedings. **Exhibit 3 attached**

170.   The defamatory statements were understood as assertions of fact, and not as opinion, the defamatory statements were published with express and implied malice and without privilege by the defendants.

171    The defamatory statements were published with design and intent to injure the Plaintiff in his good name, reputation, and employment.

172.   As a direct and proximate result of Defendant's unlawful conduct. Plaintiff has suffered and will continue to suffer pain and suffering; loss of self-esteem; depression; severe mental anguish and emotional distress; loss of earnings and other employment benefits. Plaintiff is therefore entitled to general and compensatory damages in an amount according to proof at trial.

# SIXTH CLAIM FOR RELIEF
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### [Against all Defendants]

173.   Plaintiff incorporates herein by reference all of the foregoing facts and allegations of this complaint as though full set forth herein.

174.   The conduct of defendants, and each of them, as alleged above, was outrageous and outside the normal scope of the employment relationship.

175.   Defendants and each of them knew that their conduct would result in Plaintiff's severe emotional distress, and this conduct was perpetrated by

1    defendants and each of them, with the intent to inflict, or with reckless

2    disregard of the probability of inflicting humiliation, mental anguish, and

3    severe emotional distress upon plaintiff. Such conduct did in fact, cause

4    plaintiff severe emotional distress.

5    176.   As a direct and proximate result of Defendant's unlawful conduct.

6    Plaintiff has suffered and will continue to suffer pain and suffering; loss of self-

7    esteem; depression; severe mental anguish and emotional distress; loss of earnings

8    and other employment benefits. Plaintiff is therefore entitled to general and

9    compensatory damages in an amount according to proof at trial.

10                              **PRAYER FOR RELIEF**

11   WHEREFORE, Plaintiff prays for judgment as follows:

12   177.   For compensatory damages, including, lost past and future wages,

13   employee benefits, medical bills, mental and emotional distress and other special

14   and general damages according to proof but in excess of the jurisdictional

15   threshold of this court;

16   178.   For an award of interest, including prejudgment interest, at the legal

17   rate;

18   179.   For punitive damages in an amount to be proven at trial on all causes

19   of action for which such damages are recoverable;

20   180.   For any other applicable statutory penalties;

21   181.   For such equitable relief as may be appropriate, including injunctive

22   relief;

23   182.   For costs of suit incurred herein; and

24   For such other and further relief as this court may deem just and proper

25                             **DEMAND FOR JURY TRIAL**

26   Plaintiff Olakunle Ola hereby demands a trial by jury of all claims for relief for

27   which a jury trial is available as a matter of right.

28

1    DATED: February 16, 2024

2                                              Respectfully submitted,

3

4                                              By    _____

5

6                                                    Olakunle Ola

7                                                    Attorney Pro Per

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Complaint

OLA – Complaint for Damages

EXH.1



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

**Civil Rights Department**

KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 (voice) | 800-700-2320 (TTY) | California's Relay Service at 711
www.calcivilrights.ca.gov | contact.center@dfeh.ca.gov

EEOC Number:     480-2023-04600

Case Name:     Olakunle Ola v. GalaxE.Solutions, INC.

Filing Date:     July 6, 2023

## NOTICE TO COMPLAINANT AND RESPONDENT

This is to advise you that the above-referenced complaint is being dual filed with the California Civil Rights Department (CRD) by the U.S. Equal Employment Opportunity Commission (EEOC). The complaint will be filed in accordance with California Government Code section 12960. This notice constitutes service pursuant to Government Code section 12962.

The EEOC is responsible for the processing of this complaint. Please contact EEOC directly for any discussion of this complaint or the investigation.

## NOTICE TO COMPLAINANT OF RIGHT TO SUE

This letter is also your Right to Sue notice. **This Right to Sue Notice allows you to file a private lawsuit in State court**. According to Government Code section 12965, subdivision (c), you may bring a civil action under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The lawsuit may be filed in a State of California Superior Court. Government Code section 12965, subdivision (c), provides that such a civil action must be brought within one year from the date of this notice. Pursuant to Government Code section 12965, subdivision (e)(1), this one-year period will be tolled during the pendency of the EEOC's investigation of your complaint. You should consult an attorney to determine with accuracy the date by which a civil action must be filed. This right to file a civil action may be waived in the event a settlement agreement is signed.

Be advised, CRD does not retain case records beyond three years after a complaint is filed.

OLA – Complaint for Damages

EXH.2



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Los Angeles District Office**
255 East Temple St, 4th Floor
Los Angeles, CA 90012
(213) 785-3090
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 11/20/2023

**To:** Olakunle Ola
266 Stonecliffe Aisle
IRVINE, CA 92603
Charge No: 480-2023-04600

EEOC Representative and email:   JOE HUANG-VALERIANO
Investigator
joe.huang-valeriano@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By:Christine Park-Gonzalez
11/20/2023

Christine Park-Gonzalez
District Director

**Cc:**
Christine A Amalfe
Gibbons P.C.
1145 RAYMOND BLVD 1 GATEWAY CTR
Newark, NJ 07102

DAVID BOULTON
GalaxE.Solutions, INC.
270 DAVIDSON AVE
SOMERSET, NJ 08873

Please retain this notice for your records.

# INFORMATION RELATED TO FILING SUIT
# UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

## IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

## ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

## HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method).  You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request

Enclosure with EEOC Notice of Closure and Rights (01/22)

identifying your request as a "FOIA Request" for Charge Number 480-2023-04600 to the District Director at Christine Park-Gonzalez, 255 East Temple St 4th Floor

Los Angeles, CA 90012.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 480-2023-04600 to the District Director at Christine Park-Gonzalez, 255 East Temple St 4th Floor

Los Angeles, CA 90012.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

OLA – Complaint for Damages

EXH.3

# PERFORMANCE IMPROVEMENT PLAN (PIP)

## NOTICE AND OPPORTUNITY TO IMPROVE

| Employee Name: | Job Title: |
|---|---|
| Olakunle Ola | Senior Technical Manager |
| **Supervisor's Name:** | **Date:** |
| Brett Kerbel | 02-28-2023 |

**Level of Action:**
☐ Introductory Period   ☒ Client Initiated   ☒ Performance Deficit   ☐ Final Chance to Improve

**Employee:** You have not been performing your assigned work in accordance with what is expected from a professional with your job title and level. Due to poor performance or unacceptable behavior, you are being put on notice that this opportunity to improve is your chance to avoid further corrective action and possible termination. Immediate, consistent, and sustained improvement is expected and this process will revisit your performance with regular follow up reviews and meetings to analyze your progress. Management wants to see you improve and perform at the levels you were hired to achieve. This is your chance to regroup and demonstrate your proficiency and your professionalism. Keep in mind however, that your employment is in jeopardy and may be terminated at Management's discretion at anytime.

Description of Problem:

Kunle has not been able to consistently demonstrate an ability to document or communicate technical concepts nor does he provide active leadership or management to technical resources assigned to his projects.

1) Technical solution presented for integrating GxCapture with Git was incomplete, incorrect and had unnesseray ancillary information. This was a 1 page design flow. Despite 4 iterations with feedback from Kunle's manager, not all requested updates were included. For this minimal level of complexity this project required, a senior technical resource is expected to understand what is required with only minor adjustments necessary from initial review. Further, the presentation had no problem statement or other context, such that the document could stand on its own.

2) Kunle self-reported that on 2/17/23, client was unhappy with quality of work and questioned whether GalaxE "know what they are doing." Kunle has been responsible for GxCapture integration on his program for several months, and is responsible for ensuring viable technical solutions are in place and client maintains confidence in our efforts. He then raised concerns about remediating the situation in time for previously scheduled review on 2/21/23. Kunle should have immediately escalated the concern and understood the critical importance of success on 2/21/23 rather than pushing back on compressed timelines due to inadequate prior effort. Kunle had been tasked with solutioning GxCapture/BitBucket BOT integration at least back to 1/30/23, when Program lead asked him to review and comment on approach. Several weeks later, Kunle said he was still reviewing.

3) A Proof of concept solution (POC) was recommended. Kunle did not support the POC implementation. POC was built by junior resources without Kunle's guidance. Kunle should have actively engaged with team to ensure POC success and translate to full implementation.

4) Kunle is not an active participant in meetings, taking the position that project was already underway when he joined. Kunle has been member of the team for several months and should be a leading GalaxE SME at this point, capable of driving project implemenation and leading technical discussions. He has not asserted himself in meetings, neither consistently asking detailed technical questions nor providing constructive feedback to the team.

5) Kunle is not proactively driving solutions. He only discusses solutions when specfiically asked. He should have a holistic view of the program and, as the senior technology leader on the team, driving solutions for all of the required integrations.

6) Overall quality and detail of work is lacking. Design document, process flow and presentation examples demonstrate a minimalist approach lacking sufficient detail for delivery needs.

7) Kunle has not provided feedback to team on work product - specifically design documents and UI as requested by Program lead

8) Program lead has stated, "As a Senior resource I would have expected Kunle to be more proactive and a leader making design decisions and removing technical blockers by providing creative solutions; I haven't seen that happen and would want to release him from the project"

You have been counseled regarding these expecations beginning December 16, 2022. To date, these expecations have not been met.

**Improvement Plan:** To give you the opportunity to improve and realign your work to acceptable standards, you are being placed on a formal improvement plan. It is your Management team's intent to make you fully aware of this situation and to assist you in improving your work performance. However, it is important that you realize the responsibility to improve is yours alone.

Following below are specific expectations and/or an action plan for improved conduct and performance. We will meet again to review your adherence and progress on follow-up date: **April 14, 2023.**

Your work will be closely monitored by your management team. Improvement should be demonstrated during each follow up meeting. We trust that in so doing, we can guide you toward reestablishing yourself as a contributing employee of GalaxE.Solutions.

Kunle must demonstrate improvement in the following areas:

1) Kunle must demonstrate effective management and leadership of the GxCapture implementation team including both onshore and offshore resources. Kunle is expected to be an active fully engaged member of team on all team meetings. His is expected to provide clear guidance to assigned resources, resolve technical issues, facilitate client communication, and proactively identify risks, issues and appropriate mitigations.
2) Take ownership and accountability for technical design and implementation of GxCapture in client's environment with all expected integrations, intermediate milestones, and final delivery completed per the project schedule. Any deviation or re-alignment of the project schedule must be approved by client, GalaxE program lead and Kunle's manager.
3) Take ownership and accountability for technical design and implementation of Fisher Service Account Metadata application and DB. Partner with client to define scope for both Minimum Viable Product (MVP) and full scope application. Work with project manager and team to build and execute a sprint plan with incremental capability leading to MVP by 3/31 and remaining capability by 4/30. Any deviation or re-alignment of the sprint plan must be approved by client, GalaxE program lead and Kunle's manager
4) Work product must meet GalaxE and Client standards. Kunle must ensure high quality delivery of technical documentation to include complete and accurate architecture views and technical design documentation. To be clear, Kunle is responsible for quality and completeness of his team's deliverables and not just work done as an individual contributor. All comments received from review of draft documents must be fully addressed in the following iteration without impact to project timeline.
5) Kunle is expected to build trust and confidence with client and GalaxE leadership. Any escalations from Program Lead or Client to senior GalaxE management related to the GxCapture team, related deliverables or other responsibilities assigned to Kunle are unacceptable.
6) Kunle must meet daily with onshore and offshore technical resources and ensure there are no technical issues blocking assigned tasks. Kunle must partner with the project manager to track issues, risks and action items and ensure timely resolution. Kunle is expected to engage directly with the team to resolve technical challenges and/or engage directly with client if client support is required.
7) During the week of March 13-17, Kunle shall present the GxCapture integration architecture and design for the ACG Sailpoint program to his manager and other GalaxE resources at his manager's discretion. The presentation must include executive summary slides as well as architecture views and technical design required for implementation and deployment of the solutions. The presentation is expected to demonstrate a complete solution and client ready technical artifacts.

Immediate, consistent, sustained improvement is expected. If any portion of this improvement plan is violated at any time during the specified timeframe, or if improvement is not observed; further corrective action up to and including termination may occur.

A decrease in performance after successfully completing the improvement plan may result in being dismissed from GalaxE.Solutions without the issuance of another warning or improvement plan.

**Signatures:** *Your signature is in acknowledgement of this discussion, the improvement plan, and your understanding of what is expected. You do not have to agree with the statements above, however your improved performance will be expected and your signature denotes that you understand the weight of the situation.*

Employee's Signature _____     Supervisor's Signature _____

Date: _____     Date: _____

**1ˢᵗ Review Date:** Click here to enter text.

Click here to enter text.

**Improvement Plan:** ☐ End Improvement Plan Satisfactorily ☐ Continue Improvement Period – Follow Up: Click here to enter text.

Click here to enter text.

Immediate, consistent, sustained improvement is expected.  If any portion of this improvement plan is violated at any time during the specified timeframe, or if improvement is not observed; further corrective action up to and including termination may occur.

A decrease in performance after successfully completing the improvement plan may result in being dismissed from GalaxE.Solutions without the issuance of another warning or improvement plan.

**Signatures:** *Your signature is in acknowledgement of this discussion, the improvement plan, and your understanding of what is expected. You do not have to agree with the statements above, however your improved performance will be expected and your signature denotes that you understand the weight of the situation.*

Employee's Signature

Date:

Supervisor's Signature

Date:

**2nd Review Date:** Click here to enter text.

Click here to enter text.

**Improvement Plan:** ☐ End Improvement Plan Satisfactorily ☐ Continue Improvement Period – Follow Up: Click here to enter text.

Click here to enter text.

Immediate, consistent, sustained improvement is expected.  If any portion of this improvement plan is violated at any time during the specified timeframe, or if improvement is not observed; further corrective action up to and including termination may occur.

A decrease in performance after successfully completing the improvement plan may result in being dismissed from GalaxE.Solutions without the issuance of another warning or improvement plan.

**Signatures:** *Your signature is in acknowledgement of this discussion, the improvement plan, and your understanding of what is expected. You do not have to agree with the statements above, however your improved performance will be expected and your signature denotes that you understand the weight of the situation.*

Employee's Signature

Date:

Supervisor's Signature

Date:

**3rd Review Date:** Click here to enter text.

Click here to enter text.

**Improvement Plan Result:** ☐ End Improvement Plan Satisfactorily ☐ Termination of Employment ☐ Extend

Click here to enter text.

Immediate, consistent, sustained improvement is expected. If any portion of this extended improvement plan is violated at any time during the specified extension, or if improvement is not observed; further corrective action up to and including termination may occur.

A decrease in performance after successfully completing the extension of this improvement plan may result in being dismissed from GalaxE.Solutions without the issuance of another warning or improvement plan.

**Signatures:** *Your signature is in acknowledgement of this discussion, the improvement plan, and your understanding of what is expected. You do not have to agree with the statements above, however your improved performance will be expected and your signature denotes that you understand the weight of the situation.*

_____          _____
**Employee's Signature**                          **Supervisor's Signature**

Date: _____          Date: _____